The next matter, number 23-1533, Bruce W. Anderson v. Matthew Divris. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, Daniel Marks for the appellant, Bruce Anderson. May I reserve two minutes for rebuttal, Your Honor? You may. This case is highly unusual in at least three respects. The first is that it presents two novel, fairly technical issues of federal habeas law, both the interpretation of 2244B and the interaction between that statute and Rule 60B. Second, it arises from a truly horrible, tragic killing by a husband of his wife in what it's hard to describe, it would be hard to describe a more paradigmatic case of a heat of passion killing. And third, it involves what by all accounts are exceedingly rare procedural circumstances where a habeas petitioner who's previously filed a federal habeas petition now has a substantial claim that he received ineffective assistance of counsel from the lawyer who represented him over many years at trial, on direct appeal, and in the prior federal habeas proceedings. In those circumstances, as the Third Circuit decided in Lesko, a petitioner, like Mr. Anderson in this case, has had no meaningful opportunity to present his ineffective assistance claim. And that claim, that type of claim, the Supreme Court has said lies at the heart of federal habeas law. What the court said in Martinez and later in Trevino is the centrality of effective assistance. Let me ask you, is there anything improper? Because I've seen habeases over the years. Many times the habeas will be, you know, there will be a different attorney. But I've seen the same attorneys. I don't think there's anything improper that an attorney do to the habeas himself. No, but there's nothing improper about having the same lawyer on appeal and then represent the petitioner in a federal habeas proceeding. The issue is, if that petitioner has a substantial ineffective assistance claim, that that same attorney provided ineffective assistance, for example, by failing to object to it. So as you know, though, there's no right to counsel in this proceeding. Presumably the defendant chooses to keep on the same person. And ineffectiveness is, as you know, at the core, right, of all the arguments you can make on habeas, the one that has the best chance because of all the different procedural rules that go with it, is ineffectiveness. And so you've hired, with some understanding, a lawyer to make my habeas where the core of it is ineffectiveness, that's my best chance, and now I've hired or asked to keep on the conflicted lawyer. So it's not like sort of an undisclosed conflict. It's one that's right there, and it creates some odd incentives if we go your way, I think, in the sense that while you presented your case as a very odd circumstance, it creates a quite easy way to get around the second or successive, to get sort of more time or whatever you want by having the lawyer carry on, and there's no consequence to that. That seems like an odd incentive structure we'd be creating if we go your way. So there's a few different pieces to that. Let me try to unpack each of them, starting with the incentive structure. This is not a floodgate situation. This would be a very narrow opportunity for an individual like Mr. Anderson, who presents a substantial claim, and here we have an attorney who briefed this in the state court where the issue was exhausted, identifying under state law meritorious effective assistance of claim issues. It was fully briefed. It was opposed by the Commonwealth. This is not a pro se petition at this point. And the only situation in which a ruling in favor of Mr. Anderson would help any other petitioner is one in which the person wants to raise an ineffective assistance claim about an attorney who represented him previously in all three phases of the proceeding, and the Third Circuit says that's a unique circumstance. So what the Third Circuit cites, though, are cases about unexhausted claims and claims that truly did not exist. I mean, they just did not, you know, what happened to me in the Pennsylvania probation, that's I think later, the Third Circuit cites one of its own cases about something that happened later. Those did not exist. This claim existed. He just decided, having no right to a lawyer, to take on the lawyer to do the case that arguably couldn't make that argument, didn't make it himself, and then that's, so it seems different in that way from the cases that I did in the sense that these aren't truly unavailable arguments. They're available, just the wrong person you have hired or asked to have, the wrong person to make the argument. Right. So look, I don't disagree with you. You're absolutely right. SLAC, Stuart Martinez, Panetti, these are cases where you're dealing with an unexhausted claim or an unright claim. Magwood, of course, you have a brand new judgment. But, and again, I'm not relying on Martinez and Trevino because those are cause and prejudice cases. Those aren't about 2244B. But I think the underlying principle in those cases, and the court in Trevino uses the phrase three times, meaningful opportunity, right? A petitioner needs to have a meaningful opportunity to raise his claim. So the issue is not, is it theoretically possible? And that's where I want to get back to some of the issues about. . . But second and successive has a finality component, right? Absolutely. And so I can understand when something is completely unavailable to you to say, that's a harsh, harsh outcome. But here, it's much more nuanced and muddled as the terms of its availability, which seems to, if we went this way, we're creating this sort of incentive structure to have what I view to be the core of habeas to be kicked down the road, avoid second and successive, which seems to be counter to everything EDPA was driving at, which is let's get this done within a year, one time, make all the claims. And this, which isn't that. . . I mean, it's only unusual. . . I mean, it's not that unusual. It's just the lawyer sticks on. And it seems to create just incentives that are counter to what the statute clearly is driving at. Right. So I think, and this gets back to the right to counsel issue that you've raised a few times, Judge Aframe, I think Maples is the case that unlocks this whole puzzle here. Because Maples is a case where the Supreme Court says the petitioner had no right to counsel under Alabama law. Notwithstanding that, Pro Bono lawyers from Sullivan and Cromwell in New York abandoned him such that he failed to file a timely notice of appeal in state habeas proceedings. And what Justice Ginsburg says is no just system of law would punish a petitioner and prevent him from seeking federal habeas review because he was abandoned by his lawyer. And in making that argument, they cite cases, Supreme Court cite cases that involve not just abandonment but also conflict. So here, I agree. And we're not relying on the notion that. . . Is there a difference between a known conflict and an unknown conflict? Well, Rose v. Lundy says the purpose of these rules is not to be a trap for the unwary pro se petitioner. Now, is it possible that Bruce Anderson figured out that the lawyer who is representing him at trial on direct appeal in federal habeas had a conflict because, number one, the prosecutor's closing was improper? Number two, the lawyer should have objected to that? And number three, he could now argue ineffective assistance. . . I mean, rightly or wrongly, we require that all the time. I mean, we only give lawyers to people in these things under the Criminal Justice Act when the interests of justice are required. So most people, rightly or wrongly, go through habeas without a lawyer, and we expect them to make these arguments. Right, but this is the difference between saying that someone should have a meaningful opportunity to pursue a habeas claim and that it's actually a constitutional violation that calls for vacature of the state conviction. We're not saying that he has a perfected, ineffective assistance claim. What we're saying is the presence of conflicted counsel, as appointed counsel for an indigent defendant, prevented him in the same way abandonment would in Maples, prevented him from having a meaningful opportunity to raise this one narrow claim in these unusual circumstances, which is the only claim he still seeks to bring. I'm still not quite seeing how if he had gone pro se, wouldn't everything you say more or less still apply? He would not have a meaningful opportunity because he didn't know the conflict laws or the like. And yet in that situation, he wouldn't be able to bring a second or successive. So you're actually saying if he gets an attorney, then he gets to bring a third or a second action? Well, only in the very unusual circumstances that he has the same attorney the entire way through who cannot argue his own ineffectiveness. Sure. Why would he be better off procedurally and less able to raise something merely because he hires an attorney when if he proceeded pro se, he'd be out of luck? Well, it's not just any attorney. It's the fact that he has an attorney who raises a number of arguments. We know that. But is prohibited, is functionally not an attorney, is functionally antagonistic to him with regard to this one particular constitutional claim. Right. So assume it's not an attorney. Right. But the norm is not an attorney. Right. And had he raised that argument at the time and it had been adjudicated on its merits and denied, then he'd be staring in the face of the AEDPA bar. But it was never adjudicated on the merits. And the reason is because, as the Third Circuit said, he has the same lawyer throughout, and that lawyer cannot argue his own ineffectiveness and cannot even be expected to advise the client, you should probably fire me so that you or someone else can raise the argument that I should have objected to this improper closing. Let me ask you one final question. I believe you filed a Rule 28J letter of motion citing its recent SJC case, Commonwealth versus Brown. That was you, correct? That's right, Your Honor. Okay. And that case, at least as a matter of Massachusetts law, creates or explains what the ethical rules are. Am I correct? Yes, that's one of the things that it discusses, yes. So assuming that case helps you, wouldn't that be a purely state issue, not a federal issue? Well, it just goes to the point, which I don't think they're common with the superintendent disputes, so it's sort of icing on the cake, but it goes to the point that a lawyer cannot be expected to argue his own ineffectiveness, and, in fact, the ethical rules may prohibit that. But don't they require him to tell the client? Well, possibly, but that gets back to the issue of why it's so important. And if he doesn't, that's negligence, and is negligence of the lawyer a ground for bringing a second or successive? Well, I don't know that the Supreme Court has ever said that, but they do say all the time, and Your Honor's right, that negligence is not a cause to excuse a procedural default, but they're very careful, and this is the back-and-forth the briefs have about how to read Gonzales and Maples consistent with, I believe it's a Sixth Circuit decision, Bixby. There's a big difference being abandoned by your lawyer or having a lawyer who's conflicted and a lawyer who's negligent, and the law is very harsh on people who have negligent or bad lawyers who provide what the Sixth Circuit calls subpar performance. But the Supreme Court treats as categorically different people who are abandoned, like Maples was by their lawyers, and it puts conflicts in that same category. Let me just ask you, based on the Commonwealth v. Brown case, can't you just go to State, Massachusetts State Court, and raise that issue, and shouldn't perhaps they give you a remedy? Well, this has been exhausted in State Court. Mr. Anderson did file a Rule 30 motion, and it was denied. Okay. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, Andre Januszewski, Assistant Attorney General for the Respondent Appellee, Matthew Diveris. More than 20 years ago, this Court held in Rodwell v. Pepe that, quote, any complaint about the inadequacy of the mechanisms available for judicial review in habeas cases ordinarily must be addressed to the Congress, not to the courts. This principle requires this Court to reject the Petitioner's novel claim that he's entitled to an equitable exception to a jurisdictional statute, namely 2244b-2. The Petitioner's arguments run afoul of Supreme Court precedent, create undesirable motivations to ensure two bites at the habeas apple, and dilute the incentive under Massachusetts law that ineffective assistance claims be raised at the earliest possible time. The Third Circuit's decision in Lesko we submit with respect was wrong, and this Court should not follow it. I want to pick up on a couple of points that Mr. Marks raised. One is that in his test he says that if a Petitioner presents substantial claims in addition to having the same attorney all the way through, that sort of limits the world in which these claims will proceed. Two Massachusetts judges have looked at the claims presented and have found no merit to them. So in the Petitioner's under his own test, these claims are not substantial. That is Judge Wren in the 2018 Superior Court Rule 30 decision and now Chief Justice Budd's gatekeeper decision. And so how this case inevitably comes back to is sort of the fact that the courts are precluded under Bowles v. Russell from creating equitable exceptions to jurisdictional requirements. Well, he's not saying it's an equitable exception. He's saying the Supreme Court has recognized that sometimes second in time doesn't mean second or successive as Congress used it. And so what he's saying is there are examples of unavailable kinds of claims, and this is unavailable in a sense. It's unavailable to be raised at that time because you have a conflicted lawyer. That's the argument. And there is whether it's an extension or not is one thing, but I don't view it as something different in kind. And the question is does this difference in degree matter? I guess it's a close call whether it's a different kind of claim in kind versus in degree. But if I were to agree with you and say what he's trying to do is go under either the Panetti or the Stewart v. Martinez line of cases, that's the ripeness cases. So there under those have only ever applied to Ford competency claims to be executed. They have never applied those cases in another circumstance. And so I'm not sure that perhaps the Supreme Court could extend that precedent to a situation like this. But just that lack. Or the cases are unexhausted. You have a mixed petition that they dismiss, and then that doesn't count, and you can bring another one, and the idea is you never got a real chance. And what he's saying, which is what I want to hear the response to, is he didn't get a real chance. Do you have a response to this sort of real chance idea?  He didn't get a real chance only by virtue of his keeping the same attorney, to which he was not entitled. He has had an entire round of federal habeas review. And I recognize that this rule seems harsh, but the principles of AEDPA finality are so strong, particularly in the second or successive context, that I think Congress, if Congress wants to amend the law, they can. But regardless, there is no sort of exemption for these circumstances. And I think, as Judge Afram, I think as you mentioned, lawyers stick with their clients quite routinely. So the petitioner's argument that this may be extremely rare, I'm not entirely sure that's true. Because if you agree with him, lawyers, for example, that would represent their client on appeal and then in habeas, might also inevitably get a second habeas petition if there's an ineffective assistance claim alleged against the attorney in his appellate capacity in state court. And so, although this issue doesn't appear to have come up very often, I don't think that the petitioner's arguments about how narrow this is. I mean, does it deal with, in your view, does the sort of disclosed nature of the conflict matter? I mean, it is obviously the defendant knows this was my lawyer. Probably the defendant has a rudimentary understanding this is the time to complain about what that lawyer did. All of that is known. I mean, is that, because it seems, do you agree it would be different if it was an undisclosed conflict in some way? I couldn't make the claim because my lawyer was being bribed for me to not make it. I didn't know it. Would you have a different view if that were the situation? I very likely would. I think those, that is a situation of sort of the more traditionally understood conflicts. I really have not seen case law other than LESCO that has ever said just by virtue of retaining the same lawyer throughout, that is a conflict at least with respect to one type of claim. But I'm not sure being unable to raise just one type of claim is a conflict as it is sort of traditionally understood, such as representing multiple defendants or successive defendants or unaligned with an interest or bribery or anything of that nature. Well, the conflict is between your personal interest and the interest of the client. Your personal interest is not to throw yourself on your sword. It's in your client's interest to throw yourself on your sword. There's the conflict. I understand, and that is why we concede that Attorney Joronez could not have argued his own ineffectiveness. But I think in this situation, particularly on habeas review, where he's not entitled to an attorney, the petitioners, the remedy for that, at least in federal court, is that he would have had to proceed pro se. So you look at it as if Mr. Anderson made a choice. I could go myself, I could take Mr. Joronez, or I could file some kind of motion and hope a judge gives me a lawyer, and he took the Mr. Joronez approach. And your position is that comes with certain limitations, and that's a choice. And in a formalistic way, I follow all that, and then I think about the real choices of a real human being who is like, well, I'm going to have to do this myself, or the lawyer I've been with is with me, is willing to continue to help me. And it seems like in that situation, the choice of those three is obvious, and now we're going to penalize him for making the obvious choice. I think there is some equitable appeal, if you will, to the petitioner's argument. I am completely aware of that, but unfortunately, this statute is so strict, as this court even noted in its remand order, that he can't satisfy the two exceptions outlined under 2244b2 just to proceed with the second petition. So then it's like, well, does he require two at all? And the Supreme Court has kind of outlined those three exceptions, ripeness being maybe the only one arguably that applies here, and for the reasons we've discussed, the claim was available, the claim was there. This isn't a claim that didn't exist. So it did exist at the time, and so I think unfortunately the petitioner is left. And that's sort of why I started with that quote from Rodwell, because it is a difficult position, but I think as this court has recognized, Congress is sort of in the best position to address it. You referred to the statute. Does 2254i have anything to do with this, its statement that the ineffectiveness of counsel during Federal collateral post-conviction proceedings shall not be a ground for a relief in a proceeding under 2254? I will confess, Your Honor, I have never considered that, and I don't believe I have that section in front of me. So basically, if Mr. Hironis was ineffective in habeas number one, what that provision says is it doesn't matter whether Mr. Hironis is ineffective. So is ineffective in the idea of conflict that's being raised here, is that really the same thing such that that provision says, sorry, you can't really proceed with this because that's not available? Okay. As I understand it, it seems so that that section 2254i says that ineffectiveness would not be a ground for relief. In the 2254. So ineffectiveness in litigating the 2254 is not a ground for relief from the judgment. Well, I do think that's probably consistent with my position because it goes to the fact that there's no right to counsel in a habeas case. So I suspect that's the reason for the rule, but I truly have not even considered that at all. Perhaps we might have a 28J letter submission from both sides on whether 2254i has any applicability here, and if so, what? Okay. And please file it no later than this Friday. Not this Friday, the next Friday. Your Honors, I know I have a short amount of time left. If I may just make a couple of brief points on the Rule 60B question. Go ahead. The Rule 60B issue, I think this court really can't get around the timeliness problem. There's sort of two pieces here. One is that a defect in the proceedings. That goes to the conflict. There's the Fifth Circuit's decision in Clark, which the petitioner relies on. I think that's a difficult question. We submit that this type of conflict is not a defect. But regardless, I submit you don't even have to address that because first, the petitioner has not even filed a Rule 60B motion. So even if he had, it would be at a minimum 30 years after the date of the original habeas judgment. Well, he didn't just want to make sure I understand this, like he didn't file it. But we said in one of our orders, District Court, maybe you can recharacterize the second habeas as a Rule 60B. And the judge says, no, I'm not going to do that. So that seems like that issue was sort of before the District Court and decided. Do you disagree with the procedure of how that played out, at least? I don't disagree that it was sort of presented to the District Court in that way. I mean, it's quite unusual, though, for this Court to be deciding the merits of a Rule 60B motion that was actually never filed. Well, we didn't decide the merits. We said, think about, Judge, whether you should recharacterize it. And she then said, I thought about it, and I'm not going to do it. Well, I submit at least in this decision, you would have to either say agree on the timeliness or disagree and then reach whether there's a defect in the procedure. And when we talk about the timeliness, I guess the thing that struck me, I mean, this I think is in your favor, but I want to make sure I understand it right. He was making all sorts of pro se filings through the early 2000s, correct? Yes. And yet not this one. That's right. That's right, Your Honor. 2003 was the first new trial motion. 2005 was the second new trial motion and the first time. And he is pro se. Correct. And there's the uncomfortableness of he doesn't realize it for a long time because he's pro se, but as we already discussed, pro se-ness is sort of part of the habeas world. That's right. And even in the state court on a new trial Rule 30 motion, you're not entitled to an attorney. But the first time he raised the current ineffective assistance claim was 2016. And there were a number of other grounds on which he asserted attorney juronas was ineffective prior to that. Thank you. I think that's pretty dispositive of the timing point. No case, as far as I'm aware, has ever countenanced such a long delay. Just one more question. How does the merits fit into that? So yeah, maybe there was a conflict, but if the underlying merits are no good, is that a way that a 60B can be disposed of? How does that concept merge with the you're really trying to get a second merits look? I think Rodwell is really helpful on that point. So it's essentially we're either going to treat the Rule 60B as a second or successive petition, and that's really where it's just attacking the original habeas judgment, or you're seeking essentially a second chance to have the merits determined in your favor, versus there was a defect in the way that the first judgment was procured. And there are very few cases on what those defects are. The Supreme Court in Gonzales lists a couple of them. Fraud on the court is one. A couple are cited in the briefs. The Fifth Circuit in Clark v. Davis said that conflicted counsel of this nature would constitute as a defect. But as I argue in my brief, that case is distinguishable because he was actually entitled to counsel in that habeas petition because it was a death penalty case. So that's sort of the interplay, Judge Afram, to answer that question. But I would just submit this Court doesn't even necessarily need to address those issues and can resolve it on timeliness alone. Thank you. Thank you. Two minutes for Muddle. Thank you, Your Honor. Daniel Marks for the petitioner, Bruce Anderson. I want to start with one thing I think we agree on, which is that AEDPA is a strict statute. But as Judge Afram, you pointed out, what we're trying to figure out is what it means in this context. No one is arguing here that the court should carve out some new equitable exception, should go into 2244B and add a large C. The court can't do that. But what the court can do and should do, in fact, must do, is exercise its traditional role to interpret the statute that Congress decided not to define, the phrase second and successive. And the Supreme Court has said is a term of art and has wrestled with that term over and over again. And, again, there's no dispute that you could narrowly categorize the cases like Slack and Magwood and say this one falls in this bucket and this one falls in this bucket. But Mr. Anderson's contention is that, read against the backdrop of cases like Martinez and Truvino and cases about the cause and prejudice standard, the Supreme Court. So as unfair as it is, and I understand sort of the surface unfairness of what I'm going to say, but why are we not imputing to Mr. Anderson the knowledge of the limitations he is agreeing when he takes on this lawyer? And why shouldn't he be held sort of responsible for those limitations? Because the imputation principles, and these cases are a lot of them, when we're still dealing with abuse of writ before AEDPA, the imputation doctrine is based on agency law. And what the Supreme Court says is that in certain extreme circumstances, like abandonment or conflict, that agency relationship is broken, and the imputation will be unfair and improper. Abandonment is, I think my lawyer is doing everything, and then he left me. That's abandonment. This is, I hired a lawyer, understanding that there were limitations on what he can do for me, and that's sort of the, of all the choices I had, none of which are good, I picked that one. And that seems different than abandonment, which is a surprise to me. This is not a surprise. Look, at the end of the day, this is, at the end of the day, these are always difficult judgment calls for the court. And what I would say is that a pro se petitioner in Mr. Anderson's position, for him to say that I understand and I'm knowingly waiving my right, knowingly, intelligently, involuntarily waiving my right to pursue an ineffective assistance claim against Attorney Crone so he can continue to represent me on other issues in my federal habeas, that never happened. And to assume that happened, and to assume that happened where the consequence is, closing the door to federal review of an ineffective assistance claim for someone who's serving mandatory life in prison is the wrong and unfair and unjust result. And when the cases like Burton, McCleskey, talk about affirmative choices by petitioners, it's when a petitioner says, look, I know I have a claim, and I know I'm giving it up. Like when you bring a mixed petition, and you say, okay, okay, fine. My unexhausted claims, I'll live without them, Judge. I'm happy to proceed on my exhausted claims. That's not what happened here. We had a conflicted lawyer who couldn't bring a claim that some court should hear on its merits before this man spends the rest of his life in prison. Thank you, Counsel. Let's call the next case. Thank you, Counsel. That concludes argument in this case. Judge, I just wanted to clarify the deadline for that is Friday, December 13th? Yes. Thank you. Thank you.